## Case No. 16,746.

### UNITED STATES v. WISE.

[1 Cranch, C. C. 546.] [1]

Circuit Court, District of Columbia. July Term, 1809.

PRISON BOUNDS—RIGHTS OF PRISONERS.

Every prisoner not committed for treason or felony, is entitled to the benefit of the prison bounds, upon giving security.

Debt on prison-bounds bond; oyer of bond and condition; and general demurrer to the declaration. The question is whether a prisoner, committed at the suit of the United

2 [From 20 Int. Rev. Rec. 122.]
1 [Reported by Hon. William Cranch, Chief Judge.]

States, not for treason or felony, is entitled to the prison's bounds, upon giving security under the act of congress of 3d of March, 1803 (2 Stat. 237).

---

## Case No. 16,746a.

### UNITED STATES v. WISE et al.

[1 Hayw. & H. 82.] [1]

Criminal Court, District of Columbia. May 14. 1842.

MEMBERS OF CONGRESS—PRIVILEGE FROM ARREST—BREACH OF PEACE.

The plea of privilege will not avail a member of congress to prevent him from being arrested on a warrant that charges "that there was probable cause to believe a breach of the peace was about to be committed."

On the 12th of May, 1842, Judge Thruston issued a warrant charging that "there is probable cause to believe that the Honorable H. A. Wise and the Honorable Edward Stanly, members of the house of representatives, are about to commit a breach of the peace by fighting a duel, and that preparations are now making by said parties to commit said breach of the peace." Mr. Wise was arrested and the return made by the marshal before Judge Morsell, of the circuit court.

Mr. Wise appeared in person.

P. R. Fendall, U. S. Dist. Atty.

Mr. Wise denied the right of any judge or justice in this district to require of him to give or sign any bond obliging him to keep the peace outside of the district, and pleaded his privilege from arrest as a member of congress, the warrant not charging actual breach of the peace.

On the 14th of May, 1842, the honorable Messrs. Goode and Hunter of Virginia appeared as counsel for Mr. Wise before Judge Dunlop, of the criminal court.

Mr. Goode maintained the following propositions: 1st. That the warrant does not state on whose information the charge was made. 2d. That the warrant charges no specific offense. 3d. That the defendant, being a member of the house of representatives, he is privileged from arrest, except for an actual breach of the peace which is not charged in the warrant.

Mr. Hunter cited the proceedings in the court of common pleas in England and the decision of Chief-Justice Pratt, settling the question as raised in the third objection[2] in

1 [Reported by John A. Hayward, Esq., and Geo. C. Hazleton, Esq.]
2 19 State Tr. 987: The third matter insisted upon for Mr. Wilkes is that he is a member of parliament (which has been admitted by the king's sergeants) and entitled to privilege to be free from arrests in all cases except treason, felony and actual breach of the peace, and,

the celebrated Case of Wilkes[3] that members of parliament are privileged from arrest except in certain cases named. That the constitution (article 1, § 6, cl. 1) provides that "they shall in all cases, except treason, felony and breach of the peace, be privileged from arrest during their attendance at the session of their respective houses." Jefferson's Manual[4] was cited as establishing the

point, and denied that he, the defendant, could be arrested and held to bail, except for an actual breach of the peace, by any judge or justice of the peace in this District or elsewhere.

The district attorney said that the privileges claimed by senators and members ought to be rigidly scrutinized and kept within narrow limits; if, indeed, in a form of government like ours, they could be tolerated at all. He disliked the name of "privilege." It had, indeed, to use the language of Patrick Henry, "a squinting toward monarchy." It was a privilege and English history would show to what arbitrary lengths it had been carried even in a limited monarchy until the independence of the English judiciary had checked it. In the Case of Hansard,[5] printer to the house of commons, the decision of Lord Chief-Justice Denman clearly showed that whatever might have been the decision in the Wilkes Case, the doctrine of parliamentary privilege, as formerly maintained and acted upon, was emphatically repudiated by an honest and upright judge uttering from the English bench sentiments that were in unison with law and the increasing liberality of the age. That laid down in Jefferson's Manual was ill suited to the present age, and Jefferson himself would not have recommended a compliance with some of the forms and usages which were laid down in his own manual. The court had jurisdiction and it had power to interfere to prevent a breach of the peace, and it was enough to charge in the warrant that "there was probable cause to believe a breach of the peace was about to be committed."

THE COURT decided that the defendant's plea of privilege could not avail him in the present case.

After the testimony was closed, Judge DUNLOP requested the counsel to reargue the points.

After argument by the respective counsel, the court required the defendant to give security to keep the peace towards all the citizens of the United States within the District of Columbia, and not at any time within the period of one year to leave the District with the intention or purpose of fighting a duel with Edward Stanly, under the penalty of $3,000.